# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: **S.S.-1, S.S.-2, and C.S.**

**No. 17-0609** (Webster County 16-JA-29, 16-JA-30, & 16-JA-31)

**FILED**

**December 1, 2017**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother S.S.-3, by counsel Christopher G. Moffatt, appeals the Circuit Court of Webster County's May 2, 2017, order terminating her parental rights to S.S.-1, S.S.-2, and C.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem ("guardian"), Mary Elizabeth Snead, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred by terminating her parental rights based upon the erroneous finding that she twice tested positive for controlled substances.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2016, the DHHR filed an abuse and neglect petition against petitioner after receiving a referral that she was homeless, living in her car, and had substance abuse problems. The referral also indicated that the children were living with friends and relatives, who were unaware of petitioner's whereabouts. Child Protective Services ("CPS") began an investigation to locate petitioner. Upon learning of the investigation, petitioner contacted the CPS worker but refused to disclose where she was staying. Petitioner advised the CPS worker that she was going to the school to retrieve the children and that there was nothing that the CPS worker could do to stop her. After speaking with petitioner, the CPS worker and two troopers from the West Virginia State Police went to the residence of J.H., petitioner's boyfriend, and found petitioner there. The CPS worker observed petitioner acting erratically. Petitioner informed the CPS worker

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because two children and petitioner share the same initials, we will refer to them as S.S.-1, S.S.-2, and S.S.-3, respectively, throughout this memorandum decision.

1

that she and the children were living in J.H.'s home and had been there for over one year. Petitioner further admitted that she had recently had a "mental breakdown" but sought no mental health treatment. Petitioner also admitted to recently taking hydrocodone, making "bad decisions" over the years, and feeling unable to care for her children. Petitioner stated that she had nothing until she met J.H.; that he had given her what she had; and that were she to lose him, she would lose everything. During the course of this visit, the CPS worker observed drugs on J.H.'s person and informed the troopers, who searched him and found methamphetamine. He was arrested at that time.

Thereafter, petitioner waived her right to a preliminary hearing. The circuit court ordered that visitation with the children be conditioned on petitioner's ability to remain drug and alcohol free. Petitioner was ordered to submit to random drug and alcohol screens and remain compliant with all conditions imposed by the court.

In June of 2016, the circuit court held an adjudicatory hearing, during which it heard the testimony of petitioner and a CPS worker. Specifically, the circuit court heard evidence that J.H. had at least three prior felony drug convictions and that petitioner was aware of these convictions. Further, petitioner tested positive for methamphetamine as recently as May of 2016, subsequent to the circuit court's entry of the order requiring her to remain drug and alcohol free. The circuit court adjudicated petitioner as an abusing parent due to her failure to provide a fit and suitable home for the children and her abuse of controlled substances while the children were in her care.[2] The circuit court informed petitioner that visitation could be resumed upon her participation in random drug and alcohol screens and remaining free of these substances, along with complying with any other conditions imposed by the circuit court.

In March of 2017, the circuit court held a dispositional hearing. Petitioner failed to attend but was represented by counsel. The circuit court heard the testimony of a CPS worker, who testified that petitioner had not had any visitation with the children since September of 2016 due to testing positive for controlled substances. Petitioner only submitted to random drug screens twice since that time, testing positive for hydrocodone in January of 2017 and initially testing positive for benzodiazepines in February of 2017, although laboratory confirmation for the February screen had not yet been received at the time of the dispositional hearing. Petitioner was granted parenting classes and adult life skills classes but failed to participate in any services, causing the service provider to close her case. The CPS worker further testified that, against court orders, petitioner allowed her boyfriend to move back into her home upon his release from jail. Subsequently, petitioner moved to Virginia. Thereafter, the circuit court found that petitioner was ordered to remain drug and alcohol free, yet continued to test positive for controlled substances, having so tested in January and February of 2017. Further, the circuit court noted

---

[2]While petitioner was adjudicated as "an abusive and/or neglectful parent," we note that the phrase "neglectful parent" does not appear in the statutory framework for abuse and neglect proceedings in this State. Instead, West Virginia Code § 49-1-201 defines "abusing parent" as "a parent . . . whose conduct has been adjudicated by the court to constitute child abuse *or neglect* as alleged in the petition charging child abuse *or neglect*." (Emphasis added.) As such, the Court will refer to petitioner as an "abusing parent" in this memorandum decision, as that phrase encompasses parents who have been adjudicated of abuse and/or neglect.

that, during a prior hearing, it heard the testimony of a psychologist who performed a psychological evaluation of petitioner. During that hearing, the psychologist testified that petitioner had "serious issues," refused to accept responsibility, and was inconsistent with treatment. The circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare. As such, the circuit court terminated petitioner's parental rights.[3] It is from this May 2, 2017, dispositional order that petitioner appeals.

This Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights based upon the erroneous finding that she tested positive for controlled substances twice. Petitioner argues that, at the time of the dispositional hearing, laboratory confirmation had not yet been received for one of her positive tests. However, we find this argument to be without merit. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights upon findings that there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected in the near future and when necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) clearly indicates that a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child . . . .

---

[3]The parents' parental rights to the children were terminated below. The permanency plan for the children is adoption by a relative.

While petitioner argues that the circuit court erroneously relied on a preliminary positive screening without laboratory confirmation, she ignores the fact that she was still completely noncompliant with the terms placed upon her by the circuit court. While the circuit court did consider petitioner's preliminary screening, the record shows that this was certainly not the only time petitioner tested positive for controlled substances. In fact, the record indicates that petitioner tested positive for controlled substances, with laboratory confirmation, in May of 2016, September of 2016, and January of 2017. Notably, petitioner only submitted to random drug screens twice between September of 2016 and the dispositional hearing. Thus, petitioner's claim that the circuit court erred in considering one preliminary positive screen is without merit.

Further, the record is clear that there was no reasonable likelihood that the conditions of abuse and/or neglect could be corrected. The circuit court considered the psychologist's testimony that petitioner had several "serious issues" and refused to accept responsibility for her actions. In fact, the circuit court noted at the dispositional hearing that petitioner continued to blame the DHHR for removing the children from her custody. Additionally, the circuit court found that petitioner was inconsistent with her mental health treatment. Testimonial evidence demonstrated that petitioner did not participate in services such that the service provider closed her case. The record also indicates that petitioner did not visit with her children after September of 2016. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W.Va. 79, 90, n. 14, 479 S.E.2d 589, 600, n. 14 (1996)(citing *Tiffany Marie S.*, 196 W.Va. at 228 and 237, 470 S.E.2d at 182 and 191; *State ex rel. Amy M. v. Kaufman*, 196 W.Va. 251, 259, 470 S.E.2d 205, 213 (1996)). As such, the circuit court terminated petitioner's parental rights based upon its findings that there was no reasonable likelihood that she could correct the conditions of abuse and that termination was necessary for the children's welfare. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights upon such findings.

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 2, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**: December 1, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

4